JAMES R. FELTON, ESQ. (SBN: 138767)
jfelton@gblawllp.com
JEREMY H. ROTHSTEIN, ESQ. (SBN: 316140)
jrothstein@gblawllp.com
G&B LAW, LLP
16000 Ventura Boulevard, Suite 1000
Encino, California 91436
Tel:  (818) 382-6200 • Fax: (818) 986-6534

Attorneys for Debtor and Debtor in Possession
Cannon Constructors North, Inc.

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No.: 3:24-bk-30447-HLB |
| CANNON CONSTRUCTORS NORTH, INC., | (Chapter 11) |
| Debtor and Debtor in Possession. | **DECLARATION OF BEN BOYD IN SUPPORT OF DEBTOR AND DEBTOR IN POSSESSION CANNON CONSTRUCTORS NORTH, INC.'S (I) RESPONSE RE: CREDITORS HOLLIDAY DEVELOPMENT LLC, HD MAYFAIR LLC, HD 3800 LLC, HD THIRD STREET INVESTORS, TWH-CS, L.P. AND HD RELIANT MAYFAIR, LLC'S MOTION TO CONVERT CHAPTER 11 CASE TO CHAPTER 7 CASE** |
| | Hearing:<br>DATE:     May 14, 2026<br>TIME:     10:00 a.m.<br>CTRM:   19 and/or via zoom<br>             U.S. Bankruptcy Court<br>             450 Golden Gate Ave., 16th Fl.<br>             San Francisco, CA 94102 |

I, Ben Boyd, declare as follows:

1.     I am the Executive Vice President of Debtor Cannon Constructors North, Inc. ("Cannon"). I make this declaration in support of Debtor and Debtor in Possession Cannon Constructors North, Inc.'s Response regarding Creditors Holliday Development LLC, HD Mayfair LLC, HD 3800 LLC, HD Third Street Investors, TWH-CS, L.P., and HD Reliant Mayfair, LLC's

1

2668243.3 - 32643.0087

Docusign Envelope ID: 1D85A6CF-BE8F-8AC9-83B6-4740256133C3

Motion to Convert Chapter 11 Case to Chapter 7 Case [Doc. 203] (the "Motion"). Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

2. I have personal knowledge of the facts set forth herein, and if called upon to testify thereto, I could and would competently do so under oath.

3. This declaration addresses Cannon's communications with Firm Foundation Community Housing ("Firm Foundation") and the City of Vallejo (the "City") concerning the remaining payment dispute on the 2441 Broadway project and Cannon's efforts to obtain a timely funding decision.

4. Since at least November 2025, Cannon has been actively trying to resolve the remaining project payment dispute with Firm Foundation and the City. Cannon's goal has been to resolve the outstanding project balance, allow unpaid subcontractors and union-related claimants to be paid through a chapter 11 plan, avoid additional litigation over the project, and wind down Cannon in an orderly manner.

5. In mid-November 2025, representatives of Cannon, Firm Foundation, and the City participated in a meeting regarding the outstanding Broadway project payments. Immediately after that meeting, the assistant city manager asked that a follow-up meeting be scheduled. Cannon's bankruptcy counsel also followed up to keep the momentum toward a resolution. A follow-up meeting was ultimately scheduled for December 8, 2025.

6. After the December meeting, Cannon continued working on a potential resolution. In mid-January 2026, I sent an email to Firm Foundation and the City explaining Cannon's position concerning the outstanding payments and the history of the dispute. The assistant city manager responded shortly thereafter and explained the City's position. The City also asked when Cannon would provide proposed settlement options.

7. Later in January, I advised the City and Firm Foundation that Cannon was working on a reduced settlement proposal and expected to provide it shortly. By the end of January, I sent a reduced settlement proposal of $1,175,000. That amount represented a substantial reduction from Cannon's recorded mechanics lien amount of $1,472,241.11 and was intended to provide a practical path to close out the project, pay subcontractors and unions, and avoid further escalation.

DECLARATION OF BEN BOYD IN SUPPORT OF DEBTOR'S RESPONSE
TO MOTION TO CONVERT CHAPTER 11 CASE TO CHAPTER 7 CASE

2668243.3 - 32643.0007

8. After Cannon sent that reduced proposal, Cannon continued trying to obtain a City decision. In early February, the assistant city manager advised that she had been out of the office, would meet with the City's team, and would get back to us the following week. When Cannon had not received a response, Cannon's counsel recommended following up, and Cannon continued pressing for movement.

9. Around the same time, Firm Foundation advised Cannon that City staff was actively working with the City Council on the issue and was working to schedule a closed session with the Council for early or mid-March. Based on that update, I understood that the City was moving the issue through its internal process.

10. In early March, I followed up to ask whether the City had set or held the anticipated closed session. Firm Foundation responded that the matter had been pushed because of other City business and that the assistant city manager had confirmed the item would be presented later in March.

11. On March 10, I emailed Firm Foundation and the assistant city manager to emphasize the timing problem from Cannon's perspective. I explained that Cannon needed a concrete plan to present to the Bankruptcy Court, that Cannon wanted to close out the project at the reduced amount, and that Cannon wanted to get the subcontractors paid and avoid losing control of the process through conversion to chapter 7.

12. The assistant city manager later advised that the City was scheduled to discuss the matter with the City Council on March 24 and expected to provide an update afterward. Around that time, Cannon continued to pursue its $1,175,000 settlement offer with the City and Firm Foundation in advance of City Council consideration.

13. After the March 24 Council meeting date, I followed up with the assistant city manager for an update. She then asked Cannon for additional detail concerning the outstanding balances, including information concerning what was owed to subcontractors and the basis for the remaining funding request. I responded promptly, first to clarify exactly what information the City needed, and then to provide a more complete written response.

G&B LAW

3

2668243.3 - 32643.0007    Case: 24-30447    Doc# 211    Filed: 05/07/26    Entered: 05/07/26 18:16:25    Page 3 of 12

14. On April 2, I sent the assistant city manager a letter providing the additional details she requested. The purpose of that letter was to give the City the information it said it needed to evaluate Cannon's reduced funding request and bring the matter back for City Council consideration. A true and correct copy of that letter is attached hereto as **Exhibit 1**. The letter was only the last in a series of substantive written communications explaining in detail why Cannon deserved to be paid in full. The text of the letter is true and accurate based on my experience overseeing the day-to-day operations of the project and my discussions with the City and Firm Foundation. It accurately reflects Cannon's position.

15. In early April, I followed up again to confirm that the assistant city manager had received the materials and to ask whether she had any questions. I followed up again before the April 14 Council meeting to confirm that the City had what it needed and that the matter would be going back before the City Council that night. Later that night, the assistant city manager advised that the City Council did not reach Cannon's item during closed session and that she expected the item to be continued to the next regular meeting on April 28.

16. On April 22, I emailed the assistant city manager regarding Cannon's chapter 11 plan and the timing problem created by the pending motion to convert the case to chapter 7. I explained that Cannon was submitting its plan and that it was important to obtain a payment commitment from the City by May 1, before the upcoming hearing.

17. The City Council met on April 28. The next morning, I emailed the assistant city manager and asked for an update regarding what had occurred. The following day, the assistant city manager responded that she did not have anything to share at that time and believed the City Council would take the item up again on May 26.

18. That timing was a serious concern to Cannon because the hearing on the motion to convert this case is set for May 14. A May 26 Council date would come after the conversion hearing and after the May 1 date by which Cannon had asked the City to provide a funding commitment. I forwarded the April 30 response to Cannon's bankruptcy counsel and explained that Cannon intended to push for earlier City Council consideration.

19. On May 6, I emailed the assistant city manager and asked why Cannon's item would not be reviewed at the next City Council meeting on May 12. Later that day, the assistant city manager responded that Cannon's item was on the closed-session agenda for May 12.

20. Throughout this period, Cannon has followed up repeatedly, provided additional information when requested, clarified the basis for the funding request, and tried to align the City's review process with the timing of this bankruptcy case. The delays have not resulted from Cannon ignoring the issue or waiting passively for others to act. Each time the City asked for additional information, Cannon responded. Every time an expected Council date passed without a decision, Cannon followed up.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 7, 2026.

Signed by:

*Ben Boyd*

977D22DD62C7442...

BEN BOYD

DECLARATION OF BEN BOYD IN SUPPORT OF DEBTOR'S RESPONSE
TO MOTION TO CONVERT CHAPTER 11 CASE TO CHAPTER 7 CASE

2668243.3 - 32643.0007

Docusign Envelope ID: 1D85A6CF-BE8F-8AC9-83B6-4740256133C3

# EXHIBIT 1

Docusign Envelope ID: 1D85A6CF-BE8F-8AC9-83B6-4740256133C3

April 2, 2026

Gillian Haen
Assistant City Manager
City of Vallejo
Sent via email


Gillian,

This letter addresses your request for additional details and explanations regarding 1) the $1.2M of cost increases beyond the Measure P Budget, and 2) the outstanding payments owed to Cannon and the subcontractors.


**1. Budget Increases Beyond the Measure P Budget**

Please be reminded that Cannon only has insight into the project's hard construction cost budget. We have never had any direct involvement in the overall project budget (hard and soft costs), nor have we ever seen any of FFCH's overall project budgets.

That said, we understand that the Measure P Budget Allocation exercises (around April-May of 2024) included a total estimated hard construction cost budget of $19,967,151.00, based on an email from FFCH representative Heather Chicoine dated 5/20/24. We will use this number as the reference point.

Between April and May 2024, Cannon worked with FFCH to compile an estimated total construction cost to complete the project (the "Measure P Budget"). Cannon was clear throughout that we were in completely uncharted territory, attempting to restart a project after a full year stoppage, and that there could be no guarantees on the schedule, cost, or even the return of subcontractors. In the face of that uncertainty, Cannon was pushed to give a low estimate, and we ultimately gave one at $19,967,151.00.

As we now know, the final hard cost construction budget increased by $1,506,575.00, to $21,473,726.00. If anyone at the Firm Foundation or the City believed that the costs were guaranteed not to exceed, or even unlikely to exceed $19,967,151.00, then they believed that despite Cannon's clear warnings to the contrary.

The sections below categorize and explain the cost increases. Refer also to the exhibit attached to this letter, which itemizes each Change Order Request included within the analysis below.


a. <u>Known & Expected Added Costs</u> – Increase of $32,017.00

In the process of compiling the Measure P Budget, Cannon augmented our Change Order Log with estimated costs for known and expected issues and then included a $150,000 line item for additional unknown issues or cost increases. We have since reconciled that list,

and in the end, we exceeded the estimated cost for known and expected issues by $32,017.00.

Refer to the attached breakdown for itemized COR's and details on this reconciliation.

b. <u>Unanticipated Extra Costs</u> – Increase of $40,231.00

After the Measure P Budget and the project's restart in Sep 2024, the following unanticipated additional costs were incurred, which increased the budget:

i. $22,128.00 to replace stolen materials and vandalization on the project, as a result of multiple break-ins.

ii. $3,584.00 to revise installed work to align with the new public sidewalk fronting the property that was installed by a third party unrelated to the Broadway project as part of a City or County trail improvement project.

iii. $12,234.00 to add a building directory sign, which was required by Vallejo Fire.

iv. $2,285.00 for revised unit numbers due to discrepancies between plans and City-approved addresses.

c. <u>Design Changes by Owner</u> – Increase of $85,866.00

Subsequent to the Measure P Budget and the project's restart in Sep 2024, the Owner directed the following additional work and costs:

i. $8,228.00 for changes to the design of the façade at the Duet units.

ii. $22,099.00 for multiple additional required electrical components that weren't included in the Owner's design drawings.

iii. $32,102.00 for changes to the concrete flatwork design due to elevation discrepancies on drawings and uncoordinated design.

iv. $21,979 for miscellaneous changes to finishes, some finish upgrades, and resolving unclear design elements and details.

v. $1,458.00 for changes to three common area restrooms due to occupancy and code analysis.

d. <u>Continued Schedule Delays</u> – Increase of $1,348,295.00

The Measure P Budget was based on the assumption that the project could be completed by 12/31/24. During the Measure P Budget discussions, Cannon was very clear that such a date was a best-case scenario, and our internal analysis indicated it would take at least a few months longer.  As importantly, Cannon was also very clear that timely payments were *critical* to our ability to meet projections. But the timing of payments actually got *worse* after the restart, from an average of 37 days to an average of 80 days. As a result of the continued payment issues and delays, the schedule continued to suffer, as it had throughout the project because of this never-ending issue. This problem was outside of Cannon's control. All we could do was warn about the consequences, which we did.

i. Cannon was successful in bringing all but one subcontractor back to the project after the restart. The subcontractor who did not return was handling the site

concrete, and Cannon's additional cost to hire the next lowest option was $84,143.00.

ii.    The project incurred unanticipated weather delays totaling $120,283.00.

iii.    The Measure P Budget included costs to complete the project by 12/31/24. However, due to the aforementioned continued payment delays and the cumulative impacts of the funding and payment delays on the project, in addition to a design error that failed to meet ADA code in the concrete flatwork, the project did not receive Final Certificate of Occupancy until September 2025, a delay of 9 months. Cannon then spent the next month closing the project out with warranties, as-builts, and other required closeout documents, meaning a total delay of 10 months. That 10-month delay cost the project a total of $1,143,869.00, which is consistent with Cannon's established delay cost of $115,000 per month.

Importantly, Cannon issued budget updates to FFCH (and CoV) on at least a monthly basis, in the form of our monthly pay applications, in addition to periodically issuing Change Order Logs, each of which indicated the total construction budget at the time. It was also well established that the cost of schedule delays was at least $115,000 per month. Again, we did everything within our power to avoid the situation we find ourselves in, by voicing our budget and schedule concerns during the Measure P Budget exercise, establishing the monthly delay cost, as well as consistently presenting the updated construction budget to FFCH and CoV.

The actual amount of the cost increases beyond the Measure P Budget, as detailed above, is $1,506,409.00. FFCH and CoV have previously paid some of this amount, leaving the $1,276,541.37 outstanding balance on the project.

## 2.  **Current Outstanding Balances to Cannon and the Subcontractors**

The current total outstanding balance owed on the project is $1,276,541.37. We have since offered to reduce that total balance to $1,175,000.00, even though Cannon and the subcontractors continue to incur additional costs due to this project, in order to continue pursuing the monies owed, consult with attorneys, file mechanic's liens, provide responses and details to FFCH/CoV like this letter, etc. Below is a breakdown of the monies owed to each entity, with comments indicating what the remaining balance covers.

To anyone not familiar with the term "retention", this is historically 10% of the value of the work performed by a subcontractor, which is held by the Owner/Developer/Lender of a construction project as a financial safeguard, in order to secure project completion, quality, and final approval and closeout.

Please note that the retention amounts include 10% on the original contract work, as well as change orders, so a fair amount of these expenses were incurred years ago. Please also note that Cannon has ***expressly revoked the authority*** granted to Firm Foundation to pay subcontractors directly during the bankruptcy case. Firm Foundation has not objected to or challenged that revocation. Subcontractors cannot be paid except as part of a comprehensive resolution.

|   | Company | Balance | Comments |
|---|---|---|---|
| 1 | Ciarra Construction | $ 59,437.40 | Retention |
| 2 | Diablo Roofing | $ 48,569.32 | Retention |
| 3 | RT Western | $ 32,704.20 | Final COR's & Retention |
| 4 | Door Systems | $ 3,059.60 | Retention |
| 5 | Core Glass | $ 23,623.70 | Final COR's & Retention |
| 6 | Ironwood | $ 35,585.20 | Retention |
| 7 | Valdez Plastering | $ 37,922.40 | Retention |
| 8 | SF Interiors | $ 18,863.10 | Retention |
| 9 | BT Mancini | $ 11,589.50 | Retention |
| 10 | A&B Painting | $ 39,233.50 | Final COR's & Retention |
| 11 | Valdez Painting | $ 839.40 | Retention |
| 12 | Lahue & Associates | $ 6,845.21 | Final COR's & Retention |
| 13 | Scolari Marble | $ 10,769.00 | Entire Contract Value |
| 14 | Aquamatic Fire Protection | $ 22,168.00 | Retention |
| 15 | Scott Electric | $ 129,720.31 | Retention |
| 16 | Guillen Fencing | $ 49,500.00 | Entire Contract Value |
| 17 | Quality Striping | $ 660.00 | Retention |
| 18 | Berkeley Cement (BCI) | $ 23,061.60 | Retention |
| 19 | Marina Landscape | $ 15,287.00 | Retention |
| 20 | Carone & Company | $ 80,034.37 | Retention |
| 21 | Hudson Excavation | $ 5,915.60 | Retention |
| 22 | Cannon Direct Union Labor | $ 221,947.93 | Labor, Carpentry, Misc Scope |
| 23 | Carpenters' Union | $ 30,814.56 | Jun-Aug 2025 Union Dues |
| 24 | Laborers' Union | $ 20,758.70 | Jun-Sep 2025 Union Dues |
| 25 | Cannon General Conditions | $ 246,090.40 | Supervision, GC's & Retention |
| 26 | | | |
| 27 | **TOTAL** | **$ 1,175,000.00** | **Discounted Settlement Offer** |

We hope that this letter answers your remaining questions. We have been doing everything we can to help close this matter quickly and amicably. Please note that there are deadlines approaching with Cannon's bankruptcy case, so it is in everyone's best interest to get this matter resolved ASAP.

It is very unfortunate for the entire project team that we find ourselves in this position. Cannon and our subcontractors stuck with this project throughout all its multitude of challenges, over the course of 3 years. It is important to remember that the single largest driver of the budget increases, *by far*, was schedule delays caused by late payments and funding shortfalls, something which Cannon and our subcontractors had no hand in. In fact, we are the very parties most negatively impacted by those delays, including the fact that we continue to carry a $1.2M balance on the project, despite its successful completion 6 months ago.

Please let us know if you have any questions or need additional information. Thanks.

Ben Boyd
Cannon Constructors North, Inc.

Docusign Envelope ID: 1D85A6CF-BE8F-8AC9-83B6-4740256133C3

2127 Broadway Vallejo
Budget Increases After Measure P

4/2/2026

| COR # | Description | Estimate | Final | Delta | Subtotal |
|---|---|---|---|---|---|
| | **RECONCILE KNOWN ESTIMATED COSTS** | | | | |
| 10 | Conduit to Storage 214 | $ 10,000 | $ - | $ (10,000) | |
| 11 | Elec feeds to Duet units | $ 35,000 | $ 26,945 | $ (8,055) | |
| 15 | Elec Room Door Size Change | $ 1,500 | $ - | $ (1,500) | |
| 18 | Underground obstructions | $ 10,000 | $ 71,592 | $ 61,592 | |
| 21 | Temp utility fees | $ 125,000 | $ 132,496 | $ 7,496 | |
| 26 | Louvers South Elev | $ 10,000 | | $ (10,000) | |
| 27 | LV - access control, security | $ 150,000 | $ 33,686 | $ (116,314) | |
| 28 | Temp fire line | $ 15,000 | $ 19,029 | $ 4,029 | |
| 29 | Misc Electrical changes | $ 15,000 | $ 9,831 | $ (5,169) | |
| 31 | Solar conduit | $ (2,000) | $ - | $ 2,000 | |
| 32 | ASI 11 | $ 50,000 | $ 4,709 | $ (45,291) | |
| 33 | Flooring underlayment | $ - | $ 19,493 | $ 19,493 | |
| 34.1 | Funding schedule delay | $ 568,009 | $ 354,726 | $ (213,283) | |
| 34.2 | Work Stoppage due to Funding | $ 480,000 | $ 293,720 | $ (186,280) | |
| 34.3 | Schedule delay to 12/31/24 | $ - | $ 550,039 | $ 550,039 | |
| 35 | Courtyard drainage | $ 35,000 | $ 14,392 | $ (20,608) | |
| 36 | Added louvers | $ 10,000 | $ 3,575 | $ (6,425) | |
| 37 | Exterior duct caps | $ 50,000 | $ 3,994 | $ (46,006) | |
| 38 | Comm Rm Added Gyp | $ 25,000 | $ 14,858 | $ (10,142) | |
| 40 | City correction notices - added | $ 9,000 | $ 4,051 | $ (4,949) | |
| 41 | Trash room updates | $ 10,000 | $ 11,170 | $ 1,170 | |
| 44 | Duet cantilever roof | $ - | $ 16,429 | $ 16,429 | |
| 46 | Master keying | $ - | $ 7,897 | $ 7,897 | |
| 50 | Added excavation for planting due to soil analysis | $ - | $ 195,894 | $ 195,894 | |
| 99 | Future COR's | $ 150,000 | | $ (150,000) | $ 32,017 |

Docusign Envelope ID: 1D85A6CF-BE8F-8AC9-83B6-4740256133C3

2127 Broadway Vallejo

4/2/2026

Budget Increases After Measure P

| COR # | Description | Estimate | Final | Delta | Subtotal |
|---|---|---|---|---|---|
| | **UNANTICIPATED EXTRA COSTS** | | | | |
| 39 | Break-ins costs | $ - | $ 22,128 | $ 22,128 | |
| 43 | City sidewalk elev discrepancies | $ - | $ 3,584 | $ 3,584 | |
| 45 | Building directory sign | $ - | $ 12,234 | $ 12,234 | |
| 53 | Unit Signage Numbering Changes | $ - | $ 2,285 | $ 2,285 | $ 40,231 |
| | | | | | |
| | **ADDED WORK BY OWNER** | | | | |
| 51 | Changes to Duet Façade Eaves | $ - | $ 8,228 | $ 8,228 | |
| 52 | Electrical changes | $ - | $ 22,099 | $ 22,099 | |
| 54 | Concrete flatwork changes | $ - | $ 32,102 | $ 32,102 | |
| 55 | Finish Changes - door hardware, skim coat Comm columns | $ - | $ 21,979 | $ 21,979 | |
| 59 | Staff Restroom Changes RFI #241 | $ - | $ 1,458 | $ 1,458 | $ 85,866 |
| | | | | | |
| | **DELAYS** | | | | |
| 47 | Weather Delays to 4/20/25 | $ - | $ 120,283 | $ 120,283 | |
| 48 | Schedule Delay to 6/17/25 TCO | $ - | $ 545,809 | $ 545,809 | |
| 49 | Site Concrete Bust due to Funding Delay | $ - | $ 84,143 | $ 84,143 | |
| 56 | Reconcile Div 9 to Cover Escalation Costs | $ - | $ 288,548 | $ 288,548 | |
| 58 | Cannon Labor (Only) Escalation | $ - | $ 89,155 | $ 89,155 | |
| 60 | Extended General Conditions to Finish | $ - | $ 220,357 | $ 220,357 | $ 1,348,295 |
| | | | | | |
| | **TOTAL** | $ 1,756,509 | $ 3,262,918 | $ 1,506,409 | $ 1,506,409 |